UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMIE MARIE H.,[1]

Plaintiff

-vs-

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

DECISION and ORDER

1:20-CV-00190-CJS

INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review a final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") denying Plaintiff's application for Supplemental Security Income ("SSI") benefits during a period in which, although she was disabled, the Commissioner found she owned property that exceeded the allowable resource limit for SSI eligibility. Now before the Court is Plaintiff's application for judgment on the pleadings (ECF No. 27), and the Commissioner's cross-motion for judgment on the pleadings (ECF No. 37). For reasons discussed below, Plaintiff's application is denied, the Commissioner's cross-motion is granted, and the action is dismissed.

STANDARDS OF LAW

An unsuccessful claimant may bring an action in federal district court to challenge the

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

Commissioner's denial of the disability claim, in which "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).

The issue to be determined by the court in such an action is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action. Briefly, on July 25, 2012, Plaintiff filed an application for SSI benefits, and on July 29, 2014, an ALJ issued a fully-favorable decision that Plaintiff was disabled as of July 25, 2012. However, the Social Security Administration subsequently determined, pursuant to 20 C.F.R. § 416.1205,[2] that Plaintiff did not meet the non-disability requirements for SSI payments during the period between her filing date, July 25, 2012, and March 2, 2015 ("the relevant period"), since during every month of that period she had resources exceeding $2,000. Specifically, Plaintiff owned a non-residential parcel of land in Florida with a current

[2] 20 C.F.R. § 1205 states in pertinent part that from 1989 onward, "An aged, blind, or disabled individual with no spouse is eligible for benefits under title XVI of the Act if his or her nonexcludable resources do not exceed $ [2,000], and all other eligibility requirements are met." (Westlaw 2026).

market value ("CMV") exceeding $2,000.

On March 2, 2015, Plaintiff sold the parcel for $3,500.[3] After deducting closing expenses, including unpaid property taxes totaling $1,161.99, a realtor's commission of $500, and recording fees of $24.50, Plaintiff's net from the sale was $1,744.19. *See*, Settlement Statement, Tr. 385-386.[4]

Plaintiff then argued to the Commissioner that she met the SSI resource eligibility requirements during the relevant period, prior to the sale, since, although the property had a market value greater than $2,000 at all relevant times, her net proceeds from the sale were less than $2,000.

On June 20, 2023, an ALJ determined, after conducting a hearing, that Plaintiff was ineligible for SSI benefits during the period July 25, 2012 through March 2, 2015, stating in pertinent part as follows:

> According to Program Operations Manual System (POMS) SI 02301.201B, a suspension of SSI benefits is required when a recipient is not eligible to receive benefits. On October 8, 2014, the claimant filed a request for reconsideration, alleging that the property was for sale and should be considered an excluded resource because the property had value under the $2,000 resource limit when considering its minimal value, back taxes, and potentially low sale offer (Exhibit C5D). The claimant submitted additional documentation on November 10, 2014 admitting that the [current market value] ["]CMV["] was $3,840, according to [the real estate website] Zillow, but that she owed $1,113.10 in taxes, among other fees that would be disbursed upon closing (Exhibit C6D; Exhibit C41D).

---

[3] The purchase contract submitted to the SSA by Plaintiff's attorney shows that the sale contract price for the property was $3,500. Tr. 369. The HUD settlement statement from the sale reflects that same price. Tr. 378.

[4] The figures for Plaintiff's closing expenses on the second page of the HUD statement at Tr. 386 do not match the figures on the first page of that statement Tr. 385. This appears to be because at closing Plaintiff was assessed an additional amount for unpaid property taxes for the period January 1, 2015 through the closing date, March 2, 2015, in the amount of $69.41, which does not appear on the HUD statment. Presumably, then, the total amount of property taxes that Plaintiff owed on the property at closing was $1,231.40.

POMS SI 01150.005 requires CMV to be used to assess the value of resources. The CMV of a resource is the price that for which it can be reasonably expected to sell on the open market in the geographic area involved. POMS SI 01150.005 does not require the CMV to be reduced by costs like taxes, realtor's fees, or other closing costs. Accordingly, as the CMV of the property exceeded the SSI resource limits, the claimant's reconsideration request was denied on December 23, 2014 (Exhibit C7D). The claimant ultimately sold the property on March 2, 2015 for $3,500 (Exhibit C9D; Exhibit C36D). The claimant then provided evidence that, after paying the back taxes and other fees, she received $1,744.19 in proceeds from the sale of the property (Exhibit C10D).

At the hearings, the claimant testified that she came into possession of the Florida property after her father's death in November 2005. She was not aware that the property was an excess resource until her SSI eligibility was processed in 2014. She believed the property was worthless. She testified that she made plans to sell the property, but it was not put on the market until October 2014. The property sold on March 2, 2015. She received $1,700 in proceeds on March 27, 2015 (Hearing testimony). Meanwhile, the claimant's representative has repeatedly argued that the property should not have been considered a resource exceeding the $2,000 limit because the property was rural land that had no value to the claimant and that the back taxes and costs netted her less than $2,000 upon the sale of the property (See, e.g., Exhibit C8D; Exhibit C10D; Exhibit C19D; Exhibit C2E; Exhibit C11E; hearing recordings).

However, these arguments do not have merit, because, as discussed above, the property was found to have a CMV exceeding $2,000 and was, indeed, sold for $3,500 (See, e.g., Exhibit C9D; Exhibit C10D; Exhibit C35D; Exhibit C36D). Further, POMS SI 01150.005 bases the value of compensation received by a claimant in exchange for a transferred resource on the agreement and expectations at the time of transfer or contract for sale, not the proceeds actually received after disbursements. Accordingly, although the claimant received only $1,744.19 after costs, after applying the applicable law and policies, I find that the property, and the proceeds, exceeded the $2,000 resource limit. POMS SI 02301.201 states that a suspension of SSI benefits is required when a recipient is not eligible. Since the claimant had owned the property since July 25, 2012, her filing date, I find that she was ineligible for

> SSI benefits from her filing date until the March 2, 2015 sale of the property and her SSI benefits were appropriately suspended.
>
> Because . . . the claimant's countable resources during her period of eligibility, the claimant was ineligible for SSI benefits from July 25, 2012 through the sale of the property on March 2, 2015 (20 CFR 416.410, 416.412, and 416.1205).

ALJ's Decision, Transcript at pp. 12-13.

Plaintiff sought review of the ALJ's ruling, but the Appeals Council declined to review the ALJ's determination, stating in pertinent part:

> You, through your representative, submitted written exceptions dated June 27, 2023 wherein you contend that the Administrative Law Judge erred in the evaluation of your excess resources. You specifically mention that the Administrative Law Judge relied "heavily" on the Social Security Administration's Program Operations Manual System (POMS) in determining the value of a property in Florida. The Administrative Law Judge found that you were over the resource limit while you owned the property as the property had a market value of over $2,000, which was the resource limit at the time. The Administrative Law Judge relied on POMS SI 01150.005, which states that current market value is based on the value of compensation received by a claimant in exchange for a transferred resource on the agreement and expectations at the time of transfer or contract for sale, not the proceeds actually received after disbursements. You argued that, rather than evaluate the market value on the sales price of the property, the Administrative Law Judge should have used the net proceeds that the claimant received after paying fees and taxes, which was $1,744.19 (Exhibit C10D). You also argued that the use of POMS is "not legally binding" and the reliance on POMS is misplaced. POMS is the official vehicle for issuing program instructions within the Social Security Administration, and the program instructions included in POMS are derived from legislation, regulations, court decisions, and system, policy, or procedural changes. The Administrative Law Judge reasonably relied on POMS to determine the current market value of the claimant's Florida property.
>
> We find no basis for changing the Administrative Law Judge's decision dated June 20, 2023. In addition, we find that the Administrative Law Judge's

> decision complies with the orders of the U.S. District Court and Appeals Council. Furthermore, the decision is consistent with our applicable laws, regulations, and Social Security Rulings. We decline to assume jurisdiction.

Tr. 1-2.

Plaintiff subsequently commenced an action in this Court, and, on August 5, 2025, filed the subject motion for judgment on the pleadings. Plaintiff maintains that the Commissioner erred by valuing her parcel of real estate using POM SI01150.005, since that provision, according to the ALJ, "does not require the CMV (current market value) to be reduced by costs like taxes, retailers fees and other closing costs." ECF No. 27 at p. 3. Plaintiff contends that POM SI01150.005 "is in direct "contravention" of a regulation of the Commissioner, 20 C.F.R. § 416.1244. Alternatively, Plaintiff argues that since the value of the property is so close to the $2,000 resource limit, it is simply unfair, and "against equity and good conscience," to disqualify her from receiving SSI benefits based on that resource. *See, id.* at pp. 3-4. Plaintiff, though, admits that the legal concept of "equity and good conscience" to which she appeals is "explicitly related" to a different situation than what is presented here, namely, to situations where the Commissioner may decide, based on equity and good conscience, to waiver recovery of an overpayment that has been made to a claimant. Plaintiff nevertheless urges the Court to apply the same idea in the "excess resource" situation presented here. *See, id.* at p. 4 ("Realizing that the concept of equity and good conscience is explicitly related to waivers of overpayments, the principle still must be allowed to apply in a case such as this where a deserving claimant is denied two years worth of benefits on the most flimsy of grounds.").

The Commissioner disagrees, and contends, first, that Plaintiff is incorrect to claim

that POM SI01150.005, relied on by the ALJ, is contrary to the Commissioner's regulations. The Commissioner maintains, rather, that POM SI01150.005 is entirely consistent with the applicable regulation, 20 C.F.R. § 416.1201(c)(1-2), which, the Commissioner notes, "is not the one Plaintiff highlights in her brief as ostensibly conflicting with agency policy." ECF No. 37-1 at p. 7. On this point, the Commissioner states:

> The pertinent regulation is 20 C.F.R. §§ 416.1201(c)(1)-(2), which governs pre-sale valuation of real property not used as a primary residence. Nonliquid resources, of which real property is an example, are "evaluated according to their equity value," which is defined as "[t]he price that item can reasonably be expected to sell for on the open market in the particular geographic area involved . . . minus . . . [a]ny encumbrances." 20 C.F.R. § 416.1201(c)(1)-(2).
>
> Instead of citing the actually applicable regulation, Plaintiff relies on the regulation that applies when a claimant "dispos[es] of [her] resources," at which point the claimant will be considered to have available "the net proceeds to the individual from the sale." 20 C.F.R. § 416.1244. But this is not relevant to what the decision on review was adjudicating. The decision was not adjudicating whether Plaintiff was eligible for SSI as of April 2015 after she sold the property. *See* Tr. 13, 393. The issue was whether Plaintiff's property exceeded the resource limit and rendered her ineligible for SSI before she disposed of it *i.e.*, the value of the property while Plaintiff owned it from July 2012 through March 2015.
>
> Contrary to Plaintiff's argument, the actually applicable regulation at 20 C.F.R. §§ 416.1201(c)(1)-(2) is in accord with — not in contradiction to — agency policy. Program Operations Manual Systems (POMS) SI 01140.100B, J explains that, while a claimant holds the resource, it is assumed the claimant can sell the property at its estimated current market value; and that when an encumbrance (debt against the property) is alleged, the equity value of the resource is used. There is no deviation between governing regulations and agency policy. Nor can there be any reasonable dispute about the operation of those legal precepts here: Even assuming for the sake of argument that back taxes on the property qualify as an encumbrance, Plaintiff does not even argue that the equity value of the real estate while she held it was less than

$2000.

ECF No. 37-1 at pp. 7-8.

Similarly, the Commissioner contends that the "against equity and good conscience" standard upon which Plaintiff relies is inapplicable to her case:

> Plaintiff insists it was "against equity and good conscience" for her to have been denied SSI benefits prior to the sale of the property. Pl.'s Mem. at 3. She rightly acknowledges, however, that the standards pertaining to equity and good conscience pertain to overpayments, not the SSI resource limit. *Compare* 42 U.S.C. § 1383(b)(1)(B)(i), 20 C.F.R. § 416.554; with 42 U.S.C. §§ 1382(a)(1)(B), (3)(B), 20 C.F.R. §§ 416.1201(c)(1)-(2). To be sure, once Plaintiff sold the property in March 2015, she was charged only with the resources she actually received from the sale ("receipts"), which (after closing and broker costs) put her under the SSI resource limits — *i.e.*, she was not found ineligible for SSI as of April 2015. Tr. 13, 393; *see* 20 C.F.R. §§ 416.1205, 1207(e). But that is of no moment to the period prior to the sale, when the equity value of the property was the measuring stick. *See* 20 C.F.R. §§ 416.1201(c)(1)-(2); POMS SI 01140.100.

ECF No. 37-1 at p. 8.

On April 3, 2026, the case was reassigned to the undersigned by the Clerk of the Court. The Court has carefully considered the parties' submissions and the relevant portions of the record.

## DISCUSSION

In the instant case, Plaintiff does not contend that the Commissioner's decision is unsupported by substantial evidence but, rather, that the Commissioner misapplied the applicable law. *See, e.g.*, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 27 at p. 1 (Contending that the Commissioner's decision relies "upon a very narrow reading of the POMS with regard to resources" and is "contrary to the remedial purposes of the Social

Security Act."); *see also, id.* at p. 3 ("[W]e respectfully maintain that [the Commissioner's] denial of benefits to Plaintiff is antithetical to the purposes of the Act and against equity and good conscience.").

However, the Court finds, for essentially the same reasons argued by the Commissioner, that Plaintiff's legal arguments lack merit since they attempt to use incorrect standards for valuing Plaintiff's real estate during the relevant period. For example, Plaintiff relies on the definition of "net proceeds" in 20 C.F.R. § 416.1244, "Treatment of proceeds from disposition of resources," which, as the Commissioner notes, is inapplicable here, both since it pertains to recovery of overpayment to a claimant, which is not an issue in this case, and since the relevant resource here is the real property that Plaintiff owned prior to the sale, not the proceeds she received from the sale.

Rather, the Court agrees with the Commissioner that the applicable regulation is 20 C.F.R. § 416.1201(c)(1)-(2) which indicates, in pertinent part, that "nonliquid resources," including "land," are "evaluated according to their equity value except as otherwise provided, and that "equity value" means "[t]he price that [the] item can reasonably be expected to sell for on the open market in the particular geographic area involved; minus any encumbrances." *See, Pal v. Apfel*, No. 98 CIV. 1947 (LBS), 1999 WL 169485, at *4 (S.D.N.Y. Mar. 25, 1999), modified, No. 98 CIV. 1947 LBS, 2000 WL 511594 (S.D.N.Y. Apr. 27, 2000) ("Land is generally considered a non-liquid resource. Non-liquid resources are evaluated according to their equity value which, is the price for which the item can reasonably be expected to be sold on the open market, minus any encumbrances. *See id.* at § 416.1201(c)."), *aff'd*, 14 F. App'x 113 (2d Cir. 2001). Further, POMS SI 01140.042 refers

to an "encumbrance" as "a debt against the resource in question."

To the extent Plaintiff argues that she is entitled to prevail under this standard, the Court disagrees, since Plaintiff has not provided any authority, nor has the Court found any, to support the claim that her non-tax closing costs should be considered when valuing the property. In this regard, the applicable regulation indicates that the property's market value should be reduced by any encumbrances, and, as noted above, the term encumbrance is defined as "a debt against the resource in question." POMS SI 01140.042. Plaintiff's non-tax closing expenses were not an encumbrance on the land, that is, "a debt against the resource," that reduced her equity. On the other hand, it appears that Plaintiff's unpaid property taxes could be considered an encumbrance, but even so, such encumbrance does not result in an equity value below $2,000.[5] In this regard, the record indicates that the market value of the parcel was $3500, and that Plaintiff owed back taxes in the amount, at most, of $1,231.40. Therefore, even assuming *arguendo* that such taxes should be considered an encumbrance within the meaning of 20 C.F.R. § 416.1201(c)(2), Plaintiff's equity value was still in excess of $2,000 during the relevant period.

Consequently, the Court finds that to the extent that the ALJ may have erred by failing to consider the effect of any "encumbrance" when determining the property's value,[6] such

[5] POMS SI 01150.206 indicates that property taxes "due and payable" may be counted as an "encumbrance," but distinguishes encumbrances from "expenses incurred in connection with the sale (advertising costs, realtor or other listing fees, consignment or auction fees, attorney fees, etc.)." Accordingly, it does not appear to the Court that non-tax closing costs qualify as an encumbrance within the meaning of 20 C.F.R. § 416.1201(c)(1)-(2).

[6] *See*, POMS SI 01140.100 concerning non-home real property (NHRP): "Unless otherwise excluded, count the current market value (CMV) of the NHRP (or the portion of it) that belongs to the claimant . . . as a resource (For instructions on establishing the CMV, see SI 01140.100I in this section). Absent evidence to the contrary, assume that a claimant . . . can sell the property at its estimated CMV. When the claimant . . . alleges an encumbrance against the NHRP, develop and count the equity value as a resource. For

error was harmless.[7] Again, the record indicates that the market value of the parcel was $3500, and that Plaintiff owed back taxes in the amount, at most, of $1,231.40. Even assuming *arguendo* that such taxes should be considered an encumbrance within the meaning of 20 C.F.R. § 416.1201(c)(2), the property's equity value was still in excess of $2,000 during the relevant period.

In sum, Plaintiff has not shown that the Commissioner's decision is either affected by harmful legal error or unsupported by substantial evidence.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (ECF No. 27) is denied and Defendant's cross-motion for the same relief (ECF No. 37) is granted. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
August 28, 2026

ENTER:

Charles J. Siragusa

CHARLES J. SIRAGUSA
United States District Judge

---

definitions of encumbrance and equity value, see SI 01140.042."

[7] Since the Appeals Council declined to assume jurisdiction over Plaintiff's appeal, the Court considers the ALJ's decision to be the Commissioner's final decision. *See, e.g., Susan C. v. Saul*, No. 5:18-CV-00545, 2019 WL 4643717, at *1 (N.D.N.Y. Sept. 24, 2019) ("Plaintiff timely filed written exceptions with the Appeals Council. On March 29, 2018 the Appeals Council declined to assume jurisdiction of the claim making ALJ Fuller's December 8, 2016 decision a final determination of the Commissioner."). The ALJ based his ruling on current market value (CMV), without regard to "costs like taxes, realtor's fees, or other closing costs," and not on equity value. To the extent that unpaid property taxes may become an "encumbrance" on real estate by operation of law, this ruling would have been inconsistent with 20 C.F.R. § 416.1201(c)(1)-(2), since it did not consider "encumbrances." *See*, POMS SI 01150.206 (referring to "taxes due and payable by seller" as an encumbrance on real property).